UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANGELA JARVIS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-1463 |
| | § | |
| GENERAL LAND OFFICE OF THE STATE OF | § | |
| TEXAS, | § | |
| | § | |
| *Defendant*. | § | |

MEMORANDUM OPINION AND ORDER

Pending before the court is defendant General Land Office of the State of Texas's (GLO)

motion for summary judgment (Dkt. 47). Plaintiff Angela Jarvis responded (Dkt. 53), and GLO

replied (Dkt. 57). After GLO filed its reply, the court granted Jarvis's request for additional time

pursuant to Federal Rule of Civil Procedure 56(d) to depose three witnesses and file a supplemental

response. *See* Dkt. 62. In early January 2021, Jarvis filed her supplemental response (Dkt. 63) to

which GLO replied (Dkt. 64). Having considered the motion, response, reply, supplemental

response, supplemental reply, and applicable law, the court is of the opinion that GLO's motion

for summary judgment should be GRANTED.

## I. BACKGROUND

GLO hired Jarvis as an Administrative Assistant on January 1, 2011. Dkt. 47 at 4; Dkt 53

at 3. She worked in the Region 2, La Porte, Texas office of the Oil Spill Prevention and Response

Program (OSPRP). Dkt. 47 at 4. The La Porte office is one of five regional offices across the

state of Texas. *Id.* The OSPRP team is helmed by a Director, Greg Pollock, who works out of the

Austin office. *Id.* When Jarvis was hired, the Region 2 office leadership consisted of a Deputy

Director, Richard Arnhart, an Assistant Deputy Director, Scott Gaudet, and two Senior Response

Officers (SRO), Craig Cook and Craig Kartye.  *Id.*  In addition, the office had seven Response

Officers (RO) and two Administrative Assistants.  *Id.*

In Jarvis's role as an Administrative Assistant, she was responsible for "answering the

phone, preparing correspondence and reports, developing databases tracking the office's areas of

responsibility and entering data into those databases, coordinating travel authorizations and

vouchers between the RO and GLO's travel department in Austin, and providing administrative

support to the ROs."  *Id.*  In addition to these core functions, Jarvis's job description also included

"Marginal Elements," of which the only relevant one is that she "[m]ay serve as . . . Marketing

Liaison."  Dkt. 47-6 at 5.  The Marketing Liaison in La Porte coordinates the Region 2 office's

marketing team, which is responsible for public outreach, an activity that entails sending ROs into

the community to set up booths or give presentations on OSPRP's mission and activities.  Dkt. 47

at 5.  The Market Liaison also serves as a point of contact between the Region 2 marketing team

and the Outreach and Education Coordinator in Austin, Debbie Saenz.  *Id.*  GLO has adduced

evidence indicating that the position requires no separate application process or special training

and comes with no additional compensation or benefits.  *Id.*

In March 2015, Arnhart left GLO and Scott Gaudet replaced him, transitioning from

Assistant Deputy Director to Deputy Director.  *Id.* at 8.  At this time, GLO claims that the Region

2 office was "seeking to streamline many of its processes," and was therefore not permitted to fill

the Assistant Deputy Director position vacated by Gaudet.  *Id.*  Instead, in relevant part, Gaudet's

managerial duties were given to Cook.  *Id.*  Additionally, it appears that changing to become more

efficient and modern was a major theme of the OSPRP's training academy in February 2016.  *Id.*

at 9.

There are three important things that occurred or are alleged to have occurred at the training academy. First, at a social event at a bowling alley on February 1, 2016, Jarvis alleges that she saw Cook take a picture of the "backside of a female coworker with his cell phone, and . . . motion to [Jarvis] to keep quiet." Dkt. 53 at 4. Then, as several employees were congregating at the hotel bar in preparation for going out to dinner, Cook commented on the likelihood that two GLO employees, one going through a divorce, would engage in sexual activity. *Id.* While accounts vary, the evidence shows that Cook said either "look out . . . [Kartye might] get some of that," or, in reference to the female employee, that she "was going to be a horn dog all over . . . Kartye." *Id.* (citing Jarvis deposition); Dkt. 63 at 3 (citing Saenz deposition). Finally, on February 3, Cook and Kim Griffith, Region 3 Manager, led a presentation on improving OSPRP processes. Dkt. 47 at 10. Jarvis's name had accidentally been omitted from a slide that grouped all attendees for an activity during that presentation. *Id.* Jarvis picked a group but was told by Griffith that she needed to switch groups to ensure an even distribution of employee positions among the groups. *Id.* Jarvis refused to switch groups. *Id.* at 11. Cook also asked Jarvis to move but to no avail. Dkt. 47-4 at 5. Cook reported Jarvis's refusal to cooperate to Gaudet, who thought it was "insubordinate" and "reflected badly on Region 2." *Id.* Ultimately, this led to Jarvis being verbally counseled by Director Pollock. Dkt. 47 at 13; Dkt. 53 at 6.

After she returned from the training academy, Jarvis requested a meeting with Human Resources ("HR") to discuss sexual harassment allegations against Cook and grievances she had with Griffith.[1] Dkt. 53 at 5. She met with HR on February 16 and "provided a detailed verbal

---

[1] The grievances against Griffith are not relevant to the claims before the court, but involve "Work Place Violence Incident Report[s]." Dkt. 47 at 11–12. One report discussed multiple conflicts Jarvis had with Griffith at the training academy and the other was about an incident two years earlier "in which Jarvis felt Griffith acted inappropriately towards Jarvis when Jarvis declined to look at some baby pictures." *Id.*; Dkt. 47-2 at 1–5. HR concluded that neither rose to the level of work place violence. Dkt. 47-2 at 6.

complaint." *Id.*  Following the meeting, she also submitted a formal written complaint.  *Id.*  The allegations against Cook in the written complaint were that: (1) he had assigned her a stereotypically female role (cleaning the kitchen) during "Shop Days" in October 2015; (2) he had "ogl[ed] the backside of a female intern" in December 2015; (3) he had photographed a female coworker's backside at the bowling event at the training academy; and (4) he had made sexually suggestive comments about two coworkers at the hotel bar one evening during the training academy.  Dkt. 47 at 12–13; Dkt. 53 at 4.  HR investigated the allegations, concluding on February 22, 2016 that it was unable to substantiate them.  Dkt. 47 at 13; Dkt. 53 at 5–6.

On February 24, 2016, Pollock called Jarvis and discussed the conflict at the training academy surrounding Jarvis's refusal to switch groups.  Dkt. 47 at 13; Dkt. 53 at 6.  In an email memorializing the conversation, Pollock sought to "reiterate the importance of following the chain of command and respecting management's directives."  Dkt. 53-10 at 1.  Jarvis replied, thanking Pollock, confirming that they discussed the chain of command, and extending her apologies to the presenters (Cook and Griffith).  *Id.* at 2.

On February 29, 2016, Cook was designated as "Supervising Senior Response Officer," a position with "responsibilities . . . similar to the previous Assistant Regional Director position." Dkt. 53-11.  The record suggests that this was how GLO formalized Cook's assumption of some of Gaudet's managerial duties when Gaudet was promoted to Deputy Director.  *See* Dkt. 47 at 8; Dkt. 57 at 5.

On March 7, 2016, Cook met with Jarvis to explain that he was reassigning her Marketing Liaison duties.  Dkt. 47 at 14; Dkt. 47-3 at 2.  He told her that he, Kartye, and Gaudet would be taking over "social media stuff to Austin."  Dkt. 47-3 at 2.  And then he explained that GLO was going to significantly change its educational outreach strategy, but that to the extent that outreach

continued, it would be handled by ROs instead of Jarvis.  *Id.*  Although the marketing duties were being reassigned, Cook assured Jarvis that she would still be involved with the Responder Newsletter, another "marginal element" of her role.  *Id.*

Because she was "[l]eft with no other choice," Jarvis resigned from her position as an Administrative Assistant at GLO at some point in early March.  Dkt. 53 at 7.

## II. LEGAL STANDARD

A court shall grant summary judgment if a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  The moving party bears the initial burden on demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  If the moving party meets its burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial.  Fed R. Civ. P. 56(e).  Moreover, the nonmovant is required to "articulate the precise manner in which that evidence supports his or her claim."  *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).  The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in favor of the nonmovant.  *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

Jarvis has responded to GLO's motion for summary judgment in two ways.  The first way is substantive.  That is, she meets GLO's challenges head-on and addresses the merits of her

claims, providing some evidence to support them.  The second way procedural.  Before proceeding to the substantive arguments, the court will briefly address the procedural ones.

Jarvis argues that "[a]lthough captioned as a motion for summary judgment, TGLO is really complaining about the sufficiency of Jarvis's allegations vis-à-vis her hostile-work-environment claim, and it is too late to do so."  Dkt. 53 at 19.  She claims that GLO's summary judgment motion is actually a 12(b)(6) motion in disguise.  *See id.*  And if it is a 12(b)(6) motion, Jarvis asserts, the motion is untimely, the arguments are waived, the motion should be denied because the proper standard was not included, or the motion should be deferred and ruled upon at trial.  *See id.* at 19–22 & n.9.  Or, if the court does dismiss her hostile work environment claim pursuant to Rule 12(b)(6), then she should be given leave to amend her complaint.  *See id.* at 21 n.9.  The court has considered these arguments and concludes that they have no merit.  GLO's motion is appropriately before the court as a motion for summary judgment and the court will analyze and rule on it as such.

### A. Retaliatory Hostile Work Environment

In her Third Amended Complaint, Jarvis alleges a count for "Hostile Work Environment Under Title VII."  Dkt. 40 at 5–6.  But she does not allege a traditional hostile work environment claim.  For instance, Jarvis claims she "was subjected to a hostile work environment because she engaged in protected activity (i.e., she reported sexual harassment)."  *Id.* at 5.  She elaborates, alleging that she "belongs to a protected class because she engaged in protected activity," and that she "was harassed because she engaged in protected activity."  *Id.* at 6.  This is perplexing because, to make out a prima facie case of sexual harassment by a supervisor, a plaintiff must show that (1) she belongs to a protected class; (2) she was subject to unwelcome harassment; (3) based on sex; and (4) the harassment affected a "term, condition, or privilege" of employment.  *Lauderdale*

*v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 162–63 (5th Cir. 2007) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999)).   Moreover, "[a] bare allegation of harassment, unrelated to membership in any protected class, cannot form the basis of a Title VII claim." *Carr v. Sanderson Farms, Inc.*, 665 F. App'x 335, 339 (5th Cir. 2016) (unpublished per curiam decision).   It is clear, then, that if Jarvis was attempting to make out a prima facie case for supervisory sexual harassment—hostile work environment on the basis of sex—in her complaint, she has failed because she did not allege that the harassment was on the basis of sex, but rather because she engaged in protected activity.

The more likely explanation is that she was attempting to allege a retaliatory hostile work environment claim.   GLO concluded the same and analyzed it as such.   *See* Dkt. 47 at 22.   There is, however, a significant problem: "The Fifth Circuit has declined to expressly recognize a cause of action for retaliatory hostile work environment."   *Minor v. Univ. of Tex. Sw. Med. Ctr.*, No. 3:12-CV-0036-G (BF), 2013 WL 3477223, at *6 (N.D. Tex. July 10, 2013) (citations omitted) (granting summary judgment in favor of defendant because plaintiff claimed she was harassed because of her complaints, not her race); *see also Thomas v. City of Shreveport*, No. 06-1078, 2008 WL 4291211, at *11–12 (W.D. La. Sept. 15, 2008) ("The existence of a retaliatory hostile work environment claim is uncertain in the Fifth Circuit and Thomas has failed to provide this Court with ample authority and/or convincing legal analysis such that it is persuaded to hold that such a claim exists.   Thus, summary judgment is granted as to Thomas' retaliatory hostile work environment claim."); *Bryan v. Chertoff*, 217 F. App'x 289, 293 & n.3 (5th Cir. 2007) (unpublished per curiam decision) (declining to reach the question but noting that "[a]t least the Second, Sixth, Seventh, Ninth, and Tenth Circuits have adopted this cause of action." (citations omitted)).

Accordingly, to the extent that Jarvis has alleged a claim for retaliatory hostile work environment, the court grants summary judgment in favor of GLO on that claim.

### B. Hostile Work Environment

The court presumes that Jarvis may have lost faith in her retaliatory hostile work environment claim (perhaps because the claim has not been expressly recognized in this circuit) because she significantly altered her characterization of the claim in her response to GLO's motion for summary judgment. *See* Dkt. 53 at 2 n.2, 18.  First, she contends that GLO "seems to conflate and confuse Jarvis's hostile-work-environment claim with her retaliation claim." *Id.* at 2 n.2. Then, for the first time on page 18 of her response, Jarvis strays from the retaliatory hostile work environment elements she attempted to allege in her Third Amended Complaint and instead lays out the elements for a claim of supervisor harassment on the basis of sex. *Id.* at 18.  It appears that Jarvis moved the goal posts, not that GLO "conflated" or "confused" two clearly different claims. Nonetheless, in the interest of justice, the court will analyze her pure hostile work environment claim.

To prevail on a claim of sexual harassment by a supervisor, a plaintiff must show that (1) she belongs to a protected class; (2) she was subject to unwelcome harassment; (3) based on sex; and (4) the harassment affected a "term, condition, or privilege" of employment. *Lauderdale*, 512 F.3d at 162–63 (citing *Watts*, 170 F.3d at 509).  "A hostile work environment exists when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Johnson v. Halstead*, 916 F.3d 410, 417 (5th Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367 (1993)).  In its analysis, the court must take "all of the circumstances" into account, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

8

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).  Finally, "the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275 (1998)).

GLO argues only that Jarvis's hostile work environment claim fails on the last element as a matter of law.  Dkt. 47 at 22–23.  In GLO's view, Jarvis only alleges two actions that make up her hostile work environment claim: Cook's elevation to become Jarvis's supervisor and the removal of Jarvis's Marketing Liaison duties.  *Id.* at 23.  GLO contends that these actions do not constitute harassment that is severe enough or pervasive enough for her to prevail on her claim. *Id.*

In her response, Jarvis does not attempt to argue that there is a genuine dispute of material fact on this issue or cite anything in the record.  Dkt. 53 at 18–19.  Instead, she cites cases for the legal argument that the "Fifth Circuit has held that less or equally serious conduct is sufficient to withstand summary judgment."  *Id.*  Although her response to GLO's motion for summary judgment lists many facts, some of which might bolster a claim for supervisory harassment, she does not demonstrate how these facts create a genuine dispute of material fact with respect to that claim.  *Id.* at 3–7.  Furthermore, in her supplemental response, Jarvis again provides a handful of additional facts but does not tell the court which claims the facts are related to or demonstrate how the evidence applies to those claims.  Dkt. 63.  This failure to "articulate the precise manner in which [the] evidence supports . . . her claim" renders Jarvis's opposition ineffective.  *Ragas*, 136 F.3d at 458 (citing *Forsyth*, 19 F.3d at 1537).

Nonetheless the court has, with some difficulty, collected from the supplemental response the following incidents, which it believes may be relevant to Jarvis's late-arriving[2] sexual harassment claim: Cook's comments about the prospect that two coworkers might engage in sexual activity and his taking a picture of a coworker's backside at the bowling event, though the purpose and scope of the picture is disputed.  Dkt. 63 at 2–3.

These two incidents, when paired with the allegations in her complaint—that Cook was made her supervisor and that she was "demoted"—are insufficient to allow a jury to rule in her favor on her hostile work environment claim.  First, Cook's elevation to an official supervisory role and Jarvis's "demotion" are not harassment based on sex.  This disconnect makes sense because these incidents were initially put forward to support a retaliatory hostile work environment claim, not a sexual harassment claim.  Because Jarvis has provided no evidence that these incidents are based on sex, they do not support Jarvis's hostile work environment claim.  *See Carr*, 665 F. App'x at 339 ("Though we do not diminish the reality of the threat Carr may have perceived, she has failed to allege facts that suggest any harassment she encountered at work was based on her membership in any protected class.  As mentioned above, she has consistently contended that Webb's actions were based on his relationship with Carr's cousin, not on Carr's race or sex.").  While it is permissible to plead in the alternative, that's not exactly what Jarvis did here.  Through four complaints, including her live pleading, Jarvis has insisted that these actions were retaliation for her reports of sexual harassment, not sexual harassment per se.  More importantly, she has adduced no evidence demonstrating that they were based on sex.

That leaves two incidents that could form the basis of her hostile work environment claim: Cook's comments about the possibility that two coworkers might engage in sexual activity and the

---

[2] The supervisory sexual harassment claim was not present in Jarvis's initial complaint nor in her three amended complaints.  It appeared for the first time in her response to GLO's motion for summary judgment.

picture he allegedly took of a coworker's backside. But these incidents are not enough to establish a genuine issue of material fact. As an initial matter, it does not matter that Jarvis was not the target of these incidents. The Fifth Circuit has held that the "harassment of women other than the plaintiff is relevant to a hostile work environment claim." *Hernandez*, 670 F.3d at 653 (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477–78 (5th Cir. 1989)). This is because "a woman who was never herself the object of harassment might have a Title VII claim if she were forced to work in an atmosphere in which such harassment was pervasive." *Id.*

Next, the court finds that Jarvis has not provided evidence that would allow a jury to rule in her favor on the final element, that the conduct was sufficiently severe or pervasive to alter the terms, conditions, or privileges of her employment. According to the summary judgment record, there were only two incidents of alleged harassment and they both occurred in February of 2016. *See* Dkt 53 at 4, 18–19. This is hardly a pattern, let alone a frequent or pervasive one. Additionally, these were not incidents that a jury could reasonably find objectively physically threatening, humiliating, or severe enough to interfere with Jarvis's work performance. Instead, they are the type of "ordinary tribulation[] of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" that the hostile work environment standard is designed to filter out. *See West v. City of Houston*, 960 F.3d 736, 742 (5th Cir. 2020) (citing *Faragher*, 524 U.S. at 788). For these reasons, summary judgment is warranted on Jarvis's hostile work environment claim. The court comes to this conclusion in an attempt to be thorough, despite the serious questions it has about the propriety of how the claim was asserted.

### C. Retaliation

To establish a prima facie case of retaliation, Jarvis must demonstrate that (1) she engaged in protected activity under the opposition or participation clause of 42 U.S.C. § 2000e-3(a); (2) her

employer took an adverse employment action against her; and that (3) there is a causal connection between the two. *See* 42 U.S.C. § 2000e-3(a) (protected activity); *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007) (per curiam). If she does this successfully, then GLO must articulate a nonretaliatory reason for its employment action. *See McCoy*, 492 F.3d at 557. If GLO meets its burden of production, Jarvis "bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext" for retaliation. *Id.* This ultimate burden also "require[s] proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 133 S. Ct. 2517 (2013).

### 1. Protected Activity

GLO first argues that Jarvis did not engage in protected activity and therefore cannot make out a prima facie case of retaliation. Dkt. 47 at 17. Jarvis contends that she engaged in protected opposition when she made a report and submitted a formal statement to HR detailing several incidents that she found upsetting. Dkt. 53 at 16. In the formal statement, Jarvis alleged that Cook (1) assigned Jarvis to clean the kitchen during "Shop Days"; (2) leaned over to watch an intern walk down the hall then smiled and laughed at Jarvis; (3) took a picture of a coworker's backside then laughed and raised his finger to his lips to make a "shh symbol" after Jarvis showed her disapproval; and (4) made sexually suggestive comments about two coworkers. Dkt. 53-6 at 2–3.

"Under Title VII's antiretaliation provision, protected activity can consist of either: (1) 'oppos[ing] any practice made an unlawful employment practice by this subchapter' or (2) 'ma[king] a charge, testif[ing], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter.'" *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2019) (citing 42 U.S.C. § 2000e-3(a)). Jarvis's report to HR falls under the opposition clause, not the participation clause. The employee does not need to "prove that the employment

12

practice [she] complained of was [actually] unlawful." *Id.* at 240. All that is required is that she show that she "had a reasonable belief that the employer was engaged in unlawful employment practices." *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. Unit A Sept. 1981). Importantly:

> [T]he reasonable belief standard recognizes there is some zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII. The existence of this gray area between actual violation and perceived violation is best illustrated in cases where we have affirmed summary judgment on an employee's discrimination claim while simultaneously reversing summary judgment on his or her opposition clause claim.

*Rite Way Serv., Inc.*, 819 F.3d at 242 (citations to exemplary cases omitted).

Here, the court finds that the evidence submitted by Jarvis is sufficient to establish that she had a reasonable belief that Cook's actions constituted some type of unlawful workplace discrimination on the basis of sex. In the formal statement she sent to HR, Jarvis repeatedly describes Cook's actions as "inappropriate" and "progressively worse and more flagrant." Dkt. 53-6 at 2–3. Furthermore, she explains that she was "shocked and offended." *Id.* Jarvis was not required to accurately determine the legality of employment actions under Title VII before making a report in order to ensure that she would be protected from retaliation. GLO's argument that Jarvis did not engage in protected activity fails.

### 2. Materially Adverse Employment Action

Next, GLO argues that Jarvis has not suffered a materially adverse employment action. Dkt. 47 at 19–20. Again, the court finds it difficult to determine exactly what Jarvis is asserting. In her complaint, she claims that she "suffered adverse actions, including but not limited to a demotion and constructive discharge." Dkt. 40 at 4. Then, in her summary judgment response, she writes that she "was subject to public ridicule, that her harasser was promoted over her, and that she was counseled for the first time in five years." Dkt. 53 at 17. Perplexingly, Jarvis has not

provided citations for these purported adverse employment actions, writing only that "the summary judgment evidence establishes" that they happened. *Id.* at 17. The court reminds Jarvis that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas*, 136 F.3d at 458. But in this circuit, it does impose on a plaintiff the requirement that she "identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports . . . her claim." *Id.* (citing *Forsyth*, 19 F.3d at 1537). Despite more misgivings about the adequacy of Jarvis's summary judgment responses, the court will analyze four possible adverse employment actions: Jarvis's purported demotion, Cook's promotion, Jarvis's verbal reprimand, and Jarvis's constructive discharge.[3]

In the retaliation context, the Supreme Court has held that an adverse employment action is one "that a reasonable employee would have found [to be] materially adverse," which means "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405 (2006) (citations omitted). This standard separates the "trivial harms" not covered by Title VII from "employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id.* (citations omitted).

### i. Reassignment of Marketing Liaison Duties

Jarvis claims that she was demoted. Dkt. 40 at 4. In her summary judgment response, however, she does not even include the "demotion" in her statement of facts. *See* Dkt. 53 at 3–7. Nor does she even discuss her "demotion"—let alone provide evidence of her demotion or show

---

[3] The court declines to analyze whether the "public ridicule" incident mentioned by Jarvis in her response constitutes an adverse employment action. The court assumes that Jarvis is referencing the time when Cook assigned her to clean the kitchen during "Shop Days," but finds that the incident occurred several months *before* Jarvis submitted her formal statement to HR. This means that the assignment could not have been in retaliation for Jarvis's protected opposition.

how the evidence creates a genuine issue of material fact—in the materially-adverse-employment-action section of her response. *See id.* at 16–17.  She does, though, briefly mention that her "duties were taken away" in a later section of the response. *See id.* at 17.  The only evidence that the court can find in Jarvis's response or supplemental response discussing her duties being taken away is a citation to Saenz's deposition, where Saenz recalls that Cook told her he was "going in a different direction with the outreach coordinator and that he was going with a response officer."  Dkt. 63 at 4; Dkt. 63-2 at 6.

The evidence provided by GLO is much more thorough.  GLO contends that Jarvis was always employed as an Administrative Assistant, and never as a "Regional Marketing Coordinator," as Jarvis claims in her complaint.  Dkt. 47 at 20; Dkt. 40 at 3.  The job duties for an Administrative Assistant include the following: "May serve as Computer Liaison, Marketing Liaison, and Assistant Editor to 'The Responder' for the division."  Dkt. 47-6 at 5.  The summary judgment evidence shows that while Jarvis did serve as the Marketing Liaison, she did not receive any additional compensation or benefits when she began the role, nor did she lose any when Cook reassigned the responsibilities.  *Id.* at 2.  The court finds that the reassignment of the marketing liaison role is more akin to a reduction in duties than a demotion.

The Supreme Court has explained that a reassignment of duties can constitute retaliatory discrimination even when "both the former and present duties fall within the same job description." *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 70.  "Common sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable."  *Id.* at 70–71 (also considering prestige).  But a "reassignment of job duties is not automatically actionable."  *Id.* at 71.  "Whether a particular reassignment is materially

15

adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances."'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998 (1998)). Finally, a subjective preference for different duties does not mean that a reassignment of duties is a materially adverse employment action.  *See Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 485 (5th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68).

Here, the evidence shows that although Jarvis no longer performed the Marketing Liaison role, her duties remained remarkably consistent.  Jarvis has made no showing that her duties became more arduous or less prestigious.  Considering all of the circumstances presented by the parties, the court finds that Cook's reassignment of the Marketing Liaison duties away from Jarvis to other employees did not rise to the level of a materially adverse employment action.  A reasonable jury would therefore be unable to find in favor of Jarvis on her retaliation claim based on the "demotion" alone.

*ii. Cook's Promotion*

In her complaint, Jarvis highlights the fact that "Cook was put in a supervisory role over" her as an example of an action that constitutes retaliation.  Dkt. 40 at 3.  Then, she briefly mentions it again in the materially-adverse-employment-action section of her summary judgment response but does not cite to anything in the record.  Dkt. 53 at 17.  Looking to the statement of facts, the court finds some support for this claim.  Jarvis cites to her own deposition, in which she asserts that Cook was placed in a supervisory role over her.  Dkt. 47-1 at 44–45.  She also cites to an email from Gaudet explaining that Cook had been "designated as the Supervising Senior Response Officer" on February 29, 2016.  Dkt. 53-11.  Her assertion that he was only put into a supervisory

role over her after the report of harassment is somewhat contradicted, however, by her claim that Cook "had some authority over her for at least the last year of her employment." Dkt. 53 at 4.

GLO seizes on two of these ideas in its reply. Dkt. 57 at 5. Specifically, it argues that Cook's "designation formalized his supervisory responsibilities over the entire office," the implication being that he was already performing some or all of them for the last year. *Id.* Additionally, it contends that the action was "in no way targeted or limited to oversight of" Jarvis. *Id.* Neither party provides any cases discussing the Fifth Circuit's view on whether promoting the subject of a harassment claim constitutes a materially adverse employment action and the court is not aware of any. But returning to the ultimate standard—whether the action "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination"—the court finds that there is no genuine dispute of material fact. Jarvis herself indicated that Cook had already been in a supervisory role over her and GLO agrees, asserting that his position was merely formalized. Additionally, the court finds persuasive GLO's argument that this action was not targeted at Jarvis. Rather, it related to the entire office. So, either the promotion was a mere formality, or it was a genuine promotion that affected far more people than just Jarvis. Jarvis has adduced no evidence that the promotion negatively affected her in any way. Therefore, the court concludes that Cook's formal elevation to a new role was not a materially adverse employment action with respect to Jarvis.

### iii. Verbal Reprimand

Another incident that Jarvis mentions in passing as a possible materially adverse employment action is a verbal reprimand. Dkt. 53 at 17. Specifically, she writes that she "was counseled for the first time in five years after she complained about sexual harassment." *Id.* The counseling, as memorialized through emails to and from Pollock, pertained to Jarvis's failure to

switch groups at the training academy when asked to do so by Cook and Griffith.  Dkt. 53-10 at 1–2.  While the Fifth Circuit considers a written reprimand to be an adverse employment action in the retaliation context, it does not consider a verbal reprimand to be an adverse employment action.  *Compare Hypolite v. City of Houston*, 493 F. App'x 597, 607 (5th Cir. 2012) (unpublished per curiam decision) (citing *Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 555 (5th Cir. 1997)) (considering a written reprimand and noting that "[a] reprimand also is an adverse employment action"), *with King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) (unpublished per curiam decision) (first citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68; and then *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000)) ("[A]llegations of unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation.").  In this circumstance, the court finds that the counseling that Jarvis received from Pollock would be unlikely to "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.  Therefore, summary judgment is warranted on this claim because Jarvis has not provided evidence that would enable a reasonable jury to find in her favor.

### iv. Constructive Discharge

The court is aware of no Fifth Circuit cases recognizing constructive discharge as a materially adverse employment action in a retaliation claim, but the Fifth Circuit Pattern Jury Instructions indicate that "[i]n a Title VII discrimination, harassment, or retaliation case, proof of constructive discharge may satisfy the element of an adverse employment action."  Comm. on Pattern Jury Instructions, Dist. Judges Ass'n, Fifth Circuit, Fifth Circuit Pattern Jury Instructions (Civ.) § 11.6A, Westlaw (database updated 2020).  Although Jarvis alleges in her Third Amended Complaint that she suffered a constructive discharge in retaliation for reporting Cook's behavior

to HR, she does not mention constructive discharge in the materially-adverse-employment-action section of her summary judgment response nor show what events she contends precipitated her constructive discharge.  *See* Dkt. 40 at 4 (complaint); Dkt. 53 at 16–17 (summary judgment response).  The court will not manufacture this claim for Jarvis when it appears that she has all but abandoned it herself.  Consequently, the court finds that Jarvis has not demonstrated that there is a genuine issue of material fact on this claim.  Moreover, as GLO asserts, the standard for a constructive discharge is higher than that for a hostile work environment claim.  *See Brown v. Kinney Shoe*, 237 F.3d 556, 566 (5th Cir. 2001) ("Constructive discharge requires a greater degree of harassment than that required by a hostile work environment claim." (citations omitted)).  *Compare Johnson*, 916 F.3d at 417 (explaining that a hostile work environment claim requires a showing of conduct "sufficiently severe or pervasive to alter the conditions of the victim's employment") (quoting *Harris*, 510 U.S. at 21), *with Aryain*, 534 F.3d at 480 (noting that a constructive discharge claim requires a showing of "working conditions . . . so intolerable that a reasonable person in the employee's position would have felt compelled to resign").  So assuming, because that is all that it can do in the absence of Jarvis's active participation, that Jarvis's constructive discharge claim relates to the same events as her hostile work environment claim, the court finds that she has not presented evidence that would allow a reasonable jury to rule in her favor.

### 3. Causal Connection & Remaining Elements

Because Jarvis has not presented a genuine issue of material fact regarding whether she suffered a materially adverse employment action, she is unable to make out even a prima facie case of retaliation with respect to the four incidents discussed above.  This determination is enough for the court to grant summary judgment in favor of GLO on Jarvis's retaliation claims, so it need

not reach the remaining element of her prima facie case, whether there was a causal connection between her protected activity and any adverse employment action.  Likewise, because Jarvis has not met her burden to make out a prima facie case of retaliation, the burden does not shift to GLO to produce nonretaliatory reasons for the challenged actions, and so the court will not assess whether GLO has met that burden or whether Jarvis has shown that those reasons are pretextual.

## IV. CONCLUSION

GLO's motion for summary judgment (Dkt. 47) is GRANTED.  Accordingly, all of Jarvis's claims are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on March 25, 2021.

Gray H. Miller
Senior United States District Judge